# Application of 18 U.S.C. § 205 to Proposed "Master Amici"

18 U.S.C. § 205 precludes attorneys in the executive branch from serving as "master amici" in the Court of Veterans Appeals.

March 12, 1992

MEMORANDUM OPINION FOR THE CHIEF JUDGE
UNITED STATES COURT OF VETERANS APPEALS

You have requested the Department of Justice's opinion whether 18 U.S.C. § 205 would bar an attorney employed in the government from serving as a "master amicus" in the United States Court of Veterans Appeals. The Attorney General has forwarded your request to our Office. We conclude that an executive branch attorney's service as a master amicus would be prohibited by the statute.

## I.

You are exploring methods for enlisting pro bono representation for veterans having cases before the Court of Veterans Appeals and believe that attorneys in the executive branch might provide that representation. Letter for William P. Barr, Acting Attorney General, from Chief Judge Frank Q. Nebeker, United States Court of Veterans Appeals, at 2 (Nov. 6, 1991) ("Nebeker Letter"). As you observe, however, 18 U.S.C. § 205 by its terms forbids an officer or employee of the executive branch, except "in the proper discharge of his official duties," from "act[ing] as agent or attorney for prosecuting any claim against the United States" or "act[ing] as agent or attorney for anyone before any department, agency, [or] court . . . in connection with any covered matter in which the United States is a party or has a direct and substantial interest." 18 U.S.C. § 205(a)(1) & (2).[1]

___

[1] A "covered matter" is defined as "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter." 18 U.S.C. § 205(h).

There are several exceptions to the prohibition in section 205, only one of which is even arguably applicable here. That exception allows an employee, "if not inconsistent with the faithful performance of his duties," to represent a "person who is the subject of disciplinary, loyalty, or other personnel

Continued

In an effort to avoid section 205's prohibition, you propose that government attorneys act as "master amici" to the Court of Veterans Appeals pursuant to a rule to be adopted by the Court. A master amicus would "advise the Court of any nonfrivolous issue capable of being raised by the [veteran] appellant and assist the Court in understanding the Record and such issue(s)." *See* Proposed Amendment to Rule 46, Rules of Practice and Procedure, U.S. Court of Veterans Appeals (Proposed Rule 46), attached to Nebeker Letter. You contemplate that the master amicus and the veteran would not have an attorney-client relationship. To attempt to avoid even the appearance of such a relationship, the Court would require service of all papers on the veteran as well as on the master amicus. Nebeker Letter at 2. You believe that the activities of a master amicus would not be "of the kind contemplated by the proscriptions of section 205," especially in view of "the strong government policy in favor of just compensation for our nation's veterans and the non-adversarial nature of the [Veterans' Administration] claims adjudication process." Nebeker Letter at 2.

## III.

We believe that a government employee serving as a master amicus would "act[] as agent or attorney for prosecuting [a] claim against the United States" and would "act[] as agent or attorney . . . before [a] department, agency, [or] court . . . in connection with [a] covered matter in which the United States is a party or has a direct and substantial interest." 18 U.S.C. § 205(a)(1) & (2). We therefore conclude that section 205 bars government attorneys from serving as master amici.

## A.

Section 205 forbids a government employee from acting as an agent or attorney "in connection with any covered matter in which the United States is a party or has a direct and substantial interest." 18 U.S.C. § 205(a)(2). Cases before the Court of Veterans Appeals clearly are matters in which the United States has a direct and substantial interest, because it will have to pay any claims upheld by the Court. You concur in this conclusion. Nebeker Letter at 2 ("the United States has 'a direct and substantial interest' in the matter of a veteran's claim"). Moreover, the Secretary of Veterans Affairs, in his official capacity, is a party. 38 U.S.C. §§ 7261, 7263. The United States thus is a party in the cases. Therefore, section 205 clearly applies to proceedings in the Court of Veterans Appeals.

---

[1] (....continued)
administration proceedings." 18 U.S.C. § 205(d). Even that exception, however, does not appear applicable to cases in the Court of Veterans Appeals. *See, e.g.,* Office of Government Ethics Informal Advisory Opinion 85x1 (1985) (veterans' claims before the Board of Veterans' Appeals, with limited exceptions, could not come within the provision for "personnel administration proceedings," and section 205 thus applies).

A separate basis for applying section 205 is that the claims pressed by appellants in the Court of Veterans Appeals are "against the United States." 18 U.S.C. § 205(a)(1). The United States provides veterans, their dependents, or their survivors with benefits such as compensation for service-connected disability or death. 38 U.S.C. §§ 1101-1163; *see id.* § 1110 ("the United States will pay to any veteran . . . compensation as provided in this subchapter"). Veterans' claims are first presented to the Secretary of Veterans Affairs. He rules on "all questions of law and fact necessary to a decision . . . under a law that affects the provision of benefits . . . to veterans or the dependents or survivors of veterans." 38 U.S.C. § 511(a). Those rulings are reviewable by the Board of Veterans' Appeals, *id.* § 7104(a), and, in turn, the Court of Veterans Appeals has "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals." *Id.* § 7252(a). The claims of veterans appealing the denial of benefits through this process are "against the United States" in the evident sense that if the United States loses, it will have to pay. *See also* Office of Government Ethics Informal Advisory Opinion 85x1 (1985) (claims of veterans in Board of Veterans' Appeals are covered by section 205).[2]

You suggest that the veterans' claims process is "beneficial and paternalistic rather than adversarial" in the stages before review by the Court of Veterans Appeals. Nebeker Letter at 1; *see also Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 309-11, 323-24, 333-34 (1985) (proceedings before the Board of Veterans' Appeals are ex parte, and no government official appears in opposition to the veterans' claims). Whatever the nature of the prior proceedings, however, the Court of Veterans Appeals uses an adversary process. Its rules use much of the framework of the Federal Rules of Appellate Procedure. The Secretary of Veterans Affairs is represented by the General Counsel of the Department. 38 U.S.C. § 7263(a). Appellants may be represented by their counsel. *Id.* § 7263(b). In cases that proceed to a decision in the Court of Veterans Appeals, the Secretary seeks, through this adversary process, to defend the denial of veterans' claims. Thus, section 205 would apply to proceedings in the Court of Veterans Appeals, even if it did not apply to the earlier stages of the claims process.[3]

---

[2] Veterans' claims are "against the United States" even though, as you state, the United States has a "strong government policy in favor of just compensation for our nation's veterans." Nebeker Letter at 2. Although the United States has an interest in the just compensation of veterans, it also has an interest in ensuring that benefits go only to veterans who have valid claims. Moreover, we do not believe that any policy interest is sufficient in itself to limit the terms of the prohibition in section 205, although the existence of the policy interest might argue for a legislative initiative to change the statute.

[3] A letter from the Court of Veterans' Appeals Advisory Committee on Representation asserts that "many aspects of the traditional adversarial relationships between appellants and appellees do not exist in matters concerning veterans seeking review of their claims." Letter to Frank Q. Nebeker, Chief Judge, United States Court of Veterans Appeals, from Barry P. Steinberg, *et al.*, at 1 (July 9, 1991). In particular, the letter states that "the Department of Veterans Affairs (VA) and its executive, the Secretary of Veterans Affairs, the respondent in all of the Court's cases, see themselves as advocates of veterans' rights." *Id.* Nevertheless, according to your letter, "Congress created the Court of Veterans Appeals in the model and tradition of the federal courts of appeals." Nebeker Letter at 1. Moreover, as noted above, the Court of Veterans Appeals uses adversary procedures. Thus, although the Secretary's attitude and approach may differ from that of most litigants, the proceedings in the Court of Veterans Appeals are plainly adversarial.

61

## B.

The master amicus would act as "agent or attorney" for prosecuting a veteran's claim. He would fill the gap created by the veteran's lack of formal legal representation. The Court would appoint a master amicus only "where the appellant is without representation." Proposed Rule 46. The master amicus would be obligated to "advise the Court of any nonfrivolous issue capable of being raised by the appellant." *Id.* Only attorneys qualified for admission to the bar of the Court could serve as master amici. In effect, the master amicus would be responsible for presenting the arguments that would have been made by the veteran's lawyer if the veteran were represented by retained counsel: the master amicus would offer the arguments that could be made for the veteran, but not those that could support the government's position. Thus, the master amicus would carry out virtually all of the functions of appellate counsel for the veteran.[4]

To be sure, Proposed Rule 46 is obviously crafted to avoid the appearance of a typical attorney-client relationship between the master amicus and the veteran. Proposed Rule 46, for example, would require that papers be served on the veteran, as well as on the master amicus, in order to suggest that no attorney-client relationship exists. Nebeker Letter at 2.[5] The master amicus, moreover, arguably would not be the agent of the veteran in a formal sense, because the veteran would have no right to exercise immediate control over the master amicus.

Nevertheless, as an initial matter, we believe that the proposal would achieve indirectly what plainly may not be done directly. The master amicus, an attorney to be appointed only when an appellant is without representation, would present all of the arguments that could be made for the appellant. Unlike a usual amicus, the master amicus would neither represent an interest of his own[6] nor inform the court about discrete issues on which the court needs expert guidance. He would instead be brought into a case under circumstances in which a court would ordinarily appoint not an amicus, but counsel for the unrepresented party. He would thus perform a role almost identical to that of appointed counsel and would not function as amicus to the court in any ordinary or traditional sense. These circumstances suggest that such a mechanism, as a practical matter, would be used to supply an attorney for an otherwise unrepresented veteran. If section 205 could be evaded in this way, the path would be clear for numerous programs

---

[4] That a master amicus would receive no pay for his services is irrelevant. Unlike 18 U.S.C. § 203(a), section 205 is not confined to receipt or acceptance of "any compensation for representational services." *See* 18 U.S.C. § 205(a)(1).

[5] Ordinarily, briefs are served on counsel representing a party, rather than on the party himself. *See, e.g.,* U.S. Vet. App. R. 25(b) (service of papers to be made on representative of party); Fed. R. App. P. 25(b) (service of briefs to be made on counsel for a represented party); Fed. R. Civ. P. 5(b) (service to be made on counsel unless otherwise ordered by court).

[6] The Rules of Practice and Procedure for the Court of Veterans Appeals require the brief of an amicus to state "the interest of the amicus." U.S. Vet. App. R. 29(b).

in other contexts in which government attorneys, in effect, prosecute claims against the government.

This danger cannot be avoided by arguing that proceedings in the Court of Veterans Appeals might be distinguished from other, more adversarial claims adjudications in the government. As shown above, the master amicus, in fact, will occupy an adversary role in proceedings before the Court of Veterans Appeals. Indeed, if the master amicus did not occupy such an adversary role and the appeals process followed the "beneficial and paternalistic" model that you describe for those hearings that precede litigation before the Court of Veterans Appeals, the work of the master amicus would frustrate the statutory arrangements under which cases before the Court of Veterans Appeals are plainly intended to be adversary proceedings. *See* 38 U.S.C. § 7263.

As a textual matter, section 205 reaches any person who *"acts as* agent or attorney" for a claimant. Thus, section 205 focuses on the function performed by the government employee, and its prohibition may cover persons who are not formally designated as agents or attorneys for claimants. *See also United States v. Sweig,* 316 F. Supp. 1148, 1157 (S.D.N.Y. 1970) (stating that "the strict common-law notion of 'agency' does not necessarily exhaust the meaning of the prohibition" and that the statute should be given "a different and wider meaning"). Functionally, the master amicus would perform a role nearly identical to that of retained counsel. He therefore would "act as" the attorney for the veteran -- as, from your description, he is clearly intended to do.

Like its statutory predecessor, section 205 "expresses a public policy that it is improper for a Government employee to prosecute claims against the Government in a representative capacity," and it protects "the integrity of Government actions by preventing its employees from using actual or supposed influence in support of private causes." H.R. Rep. No. 748, 87th Cong., 1st Sess. 21 (1961) ("House Report"). Section 205 was intended to prevent the conflict of interest thought to arise from the "opportunity for the use of offical influence." *Id.* A master amicus would have such an opportunity to the same extent as retained counsel. *See also* S. Rep. No. 2213, 87th Cong., 2d Sess. 11 (1962) (statute aimed at "representational activities").[7]

Whatever the precise scope of the term "attorney" in section 205, we believe that the term covers such traditional "representational activities" as presenting the legal arguments of a party otherwise lacking representation.[8]

[7]Although section 205 is narrower than its predecessor statute, which extended to "aid[ing] or assist[ing]" in the prosecution of a claim, the change was intended to direct the statute more precisely to the perceived problem of official influence: "[T]he inclusion of the term 'aids or assists' would permit a broad construction embracing conduct not involving a real conflict of interest. However, acting as attorney or agent, which would afford the opportunity for the use of official influence, would continue to be prohibited." House Report at 21. The functions to be performed by the master amicus would raise the exact problem at which section 205 was aimed.

[8] *See also* Office of Government Ethics Informal Advisory Opinion 88x6 (1988) ("Generally, public officials are not permitted to step outside of their official roles to assist private entities or persons in their dealings with the Government.); Office of Government Ethics Informal Advisory Opinion 84x14

Continued

Because section 205 is a criminal statute, its construction could be governed by the rule of lenity, under which a statute is to be read narrowly in order to favor a potential defendant. That rule comes into play, however, only if "a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute." *Moskal v. United States,* 498 U.S. 103, 108 (1990) (citation omitted). The rule of lenity applies only if "there is a 'grievous ambiguity or uncertainty in the language and structure of the Act.'" *Chapman v. United States,* 500 U.S. 453, 463 (1991) (citation omitted). After resort to the language, structure, history, and motivating policies of section 205, we believe, for the reasons stated above, that there is no "grievous ambiguity or uncertainty in the language and structure" of the statute and that section 205 would cover the proposed master amicus.

We therefore conclude that 18 U.S.C. § 205 precludes attorneys in the executive branch from serving as "master amici" in the Court of Veterans Appeals.

DOUGLAS R. COX
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[8] (....continued)
(1984) (section 205 "was designed to prevent Federal employees from engaging in representational-type activities on behalf of others in their dealings with the United States"); Bayless Manning, *Federal Conflict of Interest Law* 85 (1964) ("The emphasis of Section 205 is upon action in a representative capacity, particularly in a situation involving direct confrontation between the government employee and other government employees."); cf. *Application of 18 U.S.C. §§ 203 and 205 to Federal Employees Detailed to State and Local Governments,* 4B Op. O.L.C. 498, 499 (1980) (section 205 does not forbid "purely ministerial contacts").

In construing 18 U.S.C. § 207, we have observed that "[a]n agency or representational relationship entails at least some degree of control by the principal over the agent who acts on his or her behalf." Memorandum for Michael Boudin, Deputy Assistant Attorney General, Antitrust Division, from J. Michael Luttig, Assistant Attorney General, Office of Legal Counsel, *Re: Application of 18 U.S.C. § 207(a) to Pardon Recommendation Made by Former Prosecutor,* at 6 (Oct. 17, 1990) (citation omitted). *See also United States v. Schaltenbrand,* 930 F.2d 1554, 1560-61 (11th Cir.) (defendant who had minimal role at a meeting was not an "agent" under 18 U.S.C. § 207(a) because he could not "make binding commitments on [the supposed principal's] behalf"), *cert. denied,* 502 U.S. 1005 (1991). Although Proposed Rule 46 does not provide for the veteran to direct the master amicus, we do not believe that the possible lack of control would shield the proposed arrangement from section 205. Our opinion discussing the relevance of control under section 207 dealt with a former federal employee who performed no traditional representational function but rather limited his participation to offering a "character affidavit" for a pardon applicant. In the present proposal, the master amicus would perform all the functions of appellate counsel, and the differences between the master amicus and a court-appointed counsel would be so marginal that the arrangement might be seen as a subterfuge to avoid section 205.